We were just offered an olive branch. I would request, please, to be able to reserve two minutes for rebuttal. Thank you, Your Honor. As you know, this case is Peter Santangelo v. New York Life Insurance Company. Mr. Santangelo worked for New York Life approximately 40 years. He's married, has two children, and he's a grandfather. He's a helicopter pilot and a veteran of the Vietnam War, who still to this day meets with helicopter pilots and other veterans. Mr. Santangelo submits to this court that the district court erred in dismissing all of the claims in his complaint on summary judgment based on two specific areas. One, determining that he was an independent contractor, which then left several of his other claims unanswered. And secondly, the breach of contract claim and associated claims with the contract. Of point is the Whitley case in regards to agency principles in regards to determining that he's an independent contractor. What's unique about Mr. Santangelo's specific matter is his extensive time with New York Life. Since the late 70s, he was a million-dollar roundtable member, earning significant income for New York Life, which he also benefited from. His contract, he could be terminated for a reason, no reason. It's Mr. Santangelo's position he was terminated for no reason. How can you say that in the face of a disciplinary record that shows three violations of company policy, including after he had been warned over three separate years that he would be terminated if he kept this up? Mr. Santangelo received the letter of termination subsequent to receiving a retirement packet when he called. His personnel file was void of any disciplinary procedures. It wasn't until approximately nine months later that he filed a mass commission against discrimination action that New York Life in fact stated he had violated company policies. Much of the... I thought there was contemporary documentation on each of these three occasions. Yes, Your Honor. Subsequent to the firing, New York Life did reveal that there were these policy issues. Again, not part of his personnel file, nor was he offered training or told he was on this enhanced supervision, which could lead to termination. I'm sorry. Are you saying it didn't happen? No, Your Honor. I am not saying it didn't happen. It was not part of his personnel file, nor was he told this was... Why does it matter whether it's part of his personnel file? Because he was notified that he was terminated for no reason, that those infractions did not rise to the level of terminating him. When was he told that? After... Are you saying the receipt of the retirement notice meant he was not informed that the prior violations of policy would lead to termination? That's correct, Your Honor. While he did have his sessions with quality control in regards to this, and they did advise him that if he did continue with these breaches that they considered a policy could lead to termination. That was contemporaneous with the violations? Yes, it was. Yes, there was, that it was. He was informed at that time. When he was terminated, however, there was no indication that he was terminated for those specific reasons. And the district judge said, look, it was just a bureaucratic mistake that they mailed out a retirement notice to him without... It shouldn't have been sent out that he was promptly sent a termination notice. Not specifically, Your Honor. He received a retirement packet, and when called he was informed over the phone that he had been terminated. They faxed him, they faxed a letter. Additionally, New York Life filed documentation with the regulatory commissions that Mr. Santangelo was released for lack of productivity. Again, that document wasn't changed until nine months later after Mr. Santangelo filed his MCAD claim. It's Mr. Santangelo's position that, but for his filing of the MCAD claim, New York Life would not have then produced this reason for terminating him based on those violations. You argue that the reason was a pretext. And I couldn't find anything in the record to suggest that there was evidence that other people were not, as you say, disciplined. Were there depositions done as to whether other people who you say violated the same policy were dealt with differently? No, Your Honor, there was not depositions done. It was just known that in the insurance business on the representation of Mr. Santangelo that several insurance agents do keep these forms that they're told to collect and retain from New York Life as a matter of course, and it's just generally known amongst the insurance agents no one is reprimanded or terminated based on that. So it's based on his affidavit that that is his belief or he has heard hearsay to that effect? Yes, that is correct, Your Honor. In regards to the breach of contract concerns, Mr. Santangelo worked for New York Life, as I had stated, for some 40 years under an N6 contract. He worked for them since 1968. He accumulated several years, earned them an excessive amount of money. Upon retirement, he is eligible for senior agent income, which he does collect benefits in regards to that. He was also eligible for what was called supplemental senior NILAC per contract and additional sums of money based on a formula over a 10-year period and his book of business, his productivity. New York Life determined as a result of these policy violations that he would be denied this supplemental senior NILAC, where it was understood by Mr. Santangelo that he had to satisfy three criteria. One, work for a minimum of 30 years for the company. Two, have this eligible contract and senior status. And three, elect an active status. Had Mr. Santangelo been afforded the opportunity to access his files, to access his information, which was shut off from the moment that he was terminated, he would have elected this active status. Again, but for Mr. Santangelo finding out after the fact, some nine months later, that it was based on these policy issues, he would have elected. So, I have. Thank you. Good afternoon, Your Honors. May it please the Court. Jessica Farley on behalf of New York Life Insurance Company. There are a number of reasons why this Court should affirm the District Court's summary judgment in favor of New York Life Insurance Company. The first on the age discrimination claims is the very reason on which Judge Gordon wrote the opinion, mainly that Mr. Santangelo, based on the record before you, is undisputedly an independent contractor rather than an employee under the Darden factors and the common law agency principles that are applied by this circuit and a number of other circuits in analyzing whether a person is an independent contractor or an employee. Above and beyond that reason, there are additional reasons manifest in the record why Mr. Santangelo's age discrimination claims fail as a matter of law. Before you get that, how do you square the finding of independent contractor with the control exercised over him once he was terminated, specifically denial of access to his office or anything in his office or his computer system? And quite frankly, that's the only allegations of control that really support his claim that he was an employee rather than an employee. Well, first and foremost, those were post-termination action taken by New York Life after his contract was terminated. To look... If he's an independent contractor with independent space in a building that he has a right to access, then that's contradictory to him being an independent contractor, isn't it? Well, I don't think so, Your Honor, for this reason. One, there is a company policy in the manual that states that as soon as an agent's contract is terminated, their key fob and or their access to the building is cut off. That's standard policy for the company. Is that because he has no obligation to be in that office in order to work for the company? I think it was... I thought your argument was that it was voluntary for him to choose to lease out the space that he did. He could have worked from anywhere. That's correct. So I guess is the post-termination control is not so much control over him as control over the space?  Another reason, Your Honor, is that to look at that 30-day time period, in contrast to the 40-plus years of his career, and to say that that 30-day time period mandates that he be determined an independent contractor, an employee versus an independent contractor, doesn't make practical sense. For all intents and purposes, for the 40-plus years that Mr. Santangelo was an agent of the company, under the Darden factors, all of the factors tip the balance in favor of an independent contractor. And there's a plethora of cases, no less than five cases, that this Court in the First Circuit has analyzed salesmen under the Darden factors. And we also provided and cited in our brief the cases from five other circuits, the Second, the Sixth, the Eighth, the Ninth, and the Tenth, who have all evaluated whether insurance agents are independent contractors or employees. And all of those circuits have concluded, by way of legal motion, summary judgment, or directive verdict, that they are independent contractors. So I think that there is adequate basis and legal authority on which to affirm the finding of an independent contractor. And I would like to note that in the opposing brief, there's not one case that Mr. Santangelo cites to that reached a contrary conclusion. But you need not affirm on that basis. And the other reasons that are manifest in the record for which the age discriminations fail are the statute of limitations. Mr. Santangelo waited almost five years before asserting these age discrimination claims. He was terminated and received the termination letter on April 2nd of 2009. His Chapter 151B claim expired on April 2nd, 2012. He had filed his complaint in state court bringing the contract-based claims in March of 2012. He could have brought his age discrimination claims in a timely manner then, and he chose not to do so. He did not raise the age discrimination claims until January 2014, after trial was slated to proceed on the contract-based claims. And then Judge Gorton ultimately consolidated the actions and let it proceed. The federal age claims are barred for laches based on the same argument. There is an unexplained, unjustified delay in waiting five years to raise these claims when he already had a lawsuit pending asserting the contract-based claims. And finally, the age claims are barred because of the undisputed evidence in the record that establishes the legitimate business reasons for the termination of Mr. Santangelo's contract. It is undisputed that there were three violations of company policy over a course of three years. It is undisputed that he violated company policy in 2006 and received a letter of reprimand. It is undisputed that he violated company policy in 2007 and received a letter of severe reprimand. It is undisputed that he was placed on enhanced supervision. Although he claims not to have known it was called enhanced supervision, he did testify that he was aware he was under a watchful eye because they were afraid he was violating the rules. And it's undisputed that while he was under that watchful eye, he once again violated the same company procedure in 2008. It's also undisputed that the agency standards consultant who had been meeting with Mr. Santangelo over the course of these three years sat down with him and said, the zone agency standards compliance officer is coming here to meet with you, to talk with you about these violations. This is an important meeting. Your job is at stake. Answer his questions clearly and carefully. After that meeting wherein the zone agency standards officer met with Mr. Santangelo in February of 2009 with agency standards consultant Corella present, they determined that he still was not getting it. He still was not understanding that the compliance risk associated with his actions in violating the company policy. And so the recommendation to terminate his contract proceeded forward. All of those facts are undisputed. And I think, Judge Thompson, you are also correct in stating that there is no evidence in this record on which to base a pretext. There is no evidence that the real reason for the termination of Mr. Santangelo's contract was his age, as opposed to this longstanding history of his rule violations. There is only his unsupported theory and speculation that the company terminated his contract in order to feed his book of business to these newer, younger agents that it hired. There is no depo testimony about the different treatment that he alleges occurred and that other agents violated these rules repeatedly over a course of three years and were not disciplined. There is no evidence of that in this record. There is also evidence in this record that directly contradicts his theory of age discrimination. In other words, his theory is that this company terminated his contract in order to feed his book of business to newer, younger agents. The supplemental addendum that we filed containing New York Life's answers to interrogatories reveals the exact opposite. Mr. Santangelo's book of business was and is currently being handled by agents with contracts with New York Life that range from 23 to 45 years. And their ages range from 50 to 69. So his theory of discrimination is directly refuted by the record evidence. The contract-based claims that were part of the original complaint in 2012 are also properly disposed of on summary judgment. There are three definite criteria that would qualify Mr. Santangelo as a retired agent for supplemental senior NILAC income. That being that he worked for the company for 30 plus years under a qualifying contract. He satisfied both of those prerequisites. It is the third that he failed to satisfy. The third prerequisite is that he be able to elect an active retired agent's contract. And they were called a 1-SN or a 2-SN contract. When you elect a 1-SN or 2-SN contract, you are able to continue to represent the company and sell its products. When an agent is terminated for compliance reasons and or risk reasons, the company is not then going to offer you another contract where you can continue to commit the same violations. So by virtue of his long-standing disciplinary history, he was therefore ineligible to collect SSNI. And it is undisputed that the SSNI booklet and those prerequisites govern whether he was an eligible agent for receipt of SSNI. Thank you. Thank you. Excuse me. Again, just quickly, Your Honors. In regards to the case law that has been cited in the appellee's brief, the cases that they refer from the First Circuit, Second Circuit, and so forth, are not specific to the facts of Mr. Santangelo's relationship. And in regards to that, should have been sent to the fact finder. Mr. Santangelo's in-going, outgoing mail was controlled by New York Life. His referrals, while not exclusively from New York Life, were he not to uphold meeting or looking at these referrals, he would suffer being blacklisted. New York Life can have it both ways. They terminate him, shut off his computer, refuses access, entrance into his office to be able to get at his work, which they say should have been able to continue to work and support himself where he was not. I would ask you to take a look at that specifically. I have a quick question on that one. Yes. He also sold policies for other agencies. Was that information contained in his office when he was locked out? Yes, it was, Your Honor. Yes, it was, Your Honor. And in regards to his licenses with other states and selling other products, he did that only on a very minimal basis to supplement and support his New York Life clients. Thank you.